1

2

3

4

5          IN THE UNITED STATES BANKRUPTCY COURT

6              FOR THE DISTRICT OF ARIZONA

7

| | |
|---|---|
| 8  In Re | Chapter 7 |
| 9  GTI CAPITAL HOLDINGS, LLC, an | Case Nos. 2:03-bk-07923-SSC and |
| 10  Arizona Limited Liability Company, dba | 2:03-bk-07924-SSC |
|    ROCKLAND MATERIALS, | |
| 11 | |
| 12                          Debtor. | |
| 13  In Re: | |
|    G.H. GOODMAN INVESTMENT | |
| 14  COMPANIES, LLC, | |
| 15                          Debtor. | |
| 16 | |
| 17  GRANT H. GOODMAN and TERI B. | Adv. No. 2:09-ap-00006-SSC |
|    GOODMAN, husband and wife (as | |
| 18  Guarantors-Sureties for GTI Capital | |
|    Holdings, LLC, and G.H. Goodman Invest. | |
| 19  Co. LLC; GHG Inc., (managing agent for | |
|    Stirling Bridge, LLC, a Delaware limited | |
| 20  liability company); STIRLING BRIDGE | |
|    LLC (a Delaware limited liability company); | |
| 21  NORTHERN HIGHLANDS I, II (Arizona | |
|    limited liability companies), | **MEMORANDUM  DECISION** |
| 22 | **DISMISSING THIS ADVERSARY AND** |
|                          Plaintiffs, | **GRANTING CPCC'S MOTION FOR** |
| 23 | **STAY PURSUANT TO THE ALL WRITS** |
|      v. | **ACT** |
| 24 | |
|    CALIFORNIA PORTLAND CEMENT | |
| 25  COMPANY, (a California corporation, dba | |
|    Arizona Portland Cement Company); | |
| 26  BOMBARDIER CAPITAL INC., EMPIRE | |
|    SOUTHWEST LLC (a Delaware Limited | |
| 27  Liability Company); BURCH & | |
|    CRACCHIOLO, P.A., NORLING, | |
| 28 |                              1 |

KOLSRUD, SIFFERMAN, & DAVIS, PLC;
MARISCAL, WEEKS, MCINTYRE &
FRIEDLANDER, P.A.,

                   Defendants.

## I. INTRODUCTION

On January 5, 2009, California Portland Cement Company ("CPCC") and

Mariscal, Weeks, McIntyre & Friedlander, P.A. ("MWMF") filed a Notice of Removal with this

Court.  On January 9, 2009, Bombardier Capital Inc. and Norling, Kolsrud, Sifferman & Davis,

PLLC filed a Motion to Join Notice of Removal.  The Notice of Removal sought the removal of

an action ("Removed Action") filed by the Goodman Parties in the Maricopa County Superior

Court ("State Court").[1]  The Complaint, in the Removed Action, contained the following five

potential claims for relief: (1) Arizona Racketeering, (2) Arizona Securities Fraud, (3) Arizona

Rule of Civil Procedure 60 to set aside a judgment or order, (4) Civil Rights Violations, and (5)

Aiding-and-Abetting Fraud.  On January 7, 2009, the Goodman Parties filed an Omnibus Motion

to Remand ("Motion to Remand").  On January 9, 2009, Empire Southwest LLC ("Empire

Southwest") filed a Motion to Dismiss Complaint.  A second Motion to Dismiss Complaint was

filed by CPCC and MWMF on January 12, 2009.  CPCC and MWMF also filed a "Motion for

Stay [Injunctive Relief Pursuant to 28 U.S.C. § 1651 (All Writs Act)]" ("Motion for Stay under

the All Writs Act") on January 12, 2009.

The Court entered an order on January 20, 2009, in which it granted the Goodman

Parties, the Plaintiffs in the Removed Action, thirty days to amend their Complaint ("Order to

---

**1.**  Grant H. Goodman, Teri B. Goodman, GHG Inc., Stirling Bridge, LLC, and Northern
Highlands I, II (the "Goodman Parties" or "Plaintiffs") filed a complaint ("Complaint") in the
Maricopa County Superior Court on December 15, 2008, which was assigned Case No. CV2008-
031667.  This Complaint is part of the Removed Action now pending in this Court.

Amend Complaint"), and denied all pending motions.[2]  Because of the incoherent allegations set forth in the Complaint, the Court was unable to understand the Plaintiffs' arguments and render a decision for jurisdictional and issue preclusion purposes.  However, instead of amending the Complaint, the Plaintiffs, through Grant H. Goodman ("Mr. Goodman") filed a "Writ of Supervisory Mandamus to Bankruptcy Court" ("Writ of Mandamus") on February 10, 2009 with the Federal District Court of Arizona ("District Court").  The Writ of Mandamus sought an order from the District Court directing this Court to remand the case back to the State Court.  On March 20, 2009, the Honorable Susan R. Bolton dismissed the Plaintiffs' Writ of Mandamus.[3]

As a result of the Plaintiffs' failure to amend their Complaint, this Court set a Bankruptcy Rule 7016 Scheduling Conference for March 31, 2009.  The Court stated in its Order Setting Scheduling Conference that the purpose of the conference was to determine whether one or more of the parties to the Removed Action wished to reinstate their motions previously denied by the Court without prejudice.

Prior to the Scheduling Conference, on March 11, 2009, CPCC and MWMF filed a "Motion for Reconsideration (to Reinstate and Renew) Motion to Dismiss and Motion for Injunctive Relief" ("Motion to Reinstate").  At the Scheduling Conference, the Court granted the Motion to Reinstate the Motions, and also reinstated the Plaintiffs' Motion to Remand as well as Empire Southwest's Motion to Dismiss Complaint.  An Omnibus Response was filed by the Goodman Parties on April 17, 2009. The Court set oral argument on the matters for May 14, 2009.

Taking into account the arguments of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052.  As set forth below, the Court has jurisdiction to determine the discrete issues presented in the various Motions.

---

**2.** See Docket Entry No. 14.

**3.** See U.S. District Court (Ariz.), No. CV 09-0262.

3

## II.  FACTUAL BACKGROUND

On May 8, 2003, GTI Capital Holdings, LLC, an Arizona Limited Liability Company dba Rockland Materials ("GTI"), and G.H. Goodman Investment Companies, LLC, ("G.H. Goodman") an Arizona Limited Liability Company, (together known as the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code.  Grant and Teri Goodman each individually owned a 49.5% interest in GTI Capital and a 50% interest in G.H. Goodman Investment.[4]  On June 18, 2003, the Court entered an order for joint administration of the two cases.

During the early stages of the Chapter 11 proceedings, GTI and G.H. Goodman acted as debtors in possession.  However, on July 3, 2003, after deciding a contested matter brought by the Debtors' principal creditor, the Court appointed an examiner, Edward M. McDonough, to handle and control all funds, bank accounts, and disbursements of the Debtors.  Finally, on or about January 23, 2004, the Debtors ceased their business operations, and a sale of the Debtors' assets occurred.  The subsequent proceedings involved a number of disputes, and subsequent appeals, among a number of parties as to how to divide the limited funds obtained from the liquidation of the Debtors' assets.  Ultimately the Examiner determined that he had accomplished as much as he could with the limited resources. The United States Trustee, based upon the inactivity in the case, lack of operations and employees, and with the only remaining assets consisting of case being held in the Court registry and legal claims, filed a Motion to Convert to Chapter 7, which was noticed to all creditors and interested parties. The relief requested was set for hearing on April 26, 2007.  At the hearing, the request for conversion was unopposed.  On May 1, 2007, the cases were converted to Chapter 7, and David M. Reaves was appointed the Trustee of the Debtors' estates.[5]

---

**4.** See Case No. 03-bk-07923, Docket Entry No. 55, pg. 191 and Case No. 03-bk-07924, Docket Entry No. 15, pg. 33.

**5.** See Case No. 03-bk-07923, Docket Entry No. 1461.

4

The Debtors have been involved in lengthy and protracted litigation over numerous issues since the inception of the bankruptcy cases.  Of importance in determining the issues presently before the Court is an analysis of the adversary proceeding originally commenced by the Debtors in 2007.[6]  The Debtors named Comerica Bank-California ("Comerica") as the defendant therein ("Comerica Adversary Proceeding").  The Comerica Adversary Proceeding sought the equitable subordination of the Comerica claim to the claims of all other creditors in the Debtors' bankruptcy proceedings because of Comerica's conduct.  Specifically, the Debtors alleged that Comerica had withheld critical information from the Debtors, the other creditors of these estates, and the Court as to the perfection of Comerica's security interests on certain items of equipment and vehicles owned by the Debtors at the inception of the cases.  The Debtors alleged that the Examiner, on behalf of the bankruptcy estates, was forced to pursue Comerica on the perfection issue in this Court and in various appellate courts, and was forced to litigate against Comerica on the propriety of various distributions to creditors, at a time when Comerica knew that it had improperly perfected security interests.  The costs to the bankruptcy estates as a result of such litigation increased exponentially.  The Debtors' estates are now administratively insolvent.  Although the Debtors initially commenced the Comerica Adversary Proceeding, the Trustee, once appointed, determined to proceed with the litigation against Comerica.

Ultimately, the Trustee and Comerica entered into a settlement agreement ("Settlement Agreement") which provided for a general release of the claims between the Trustee, on behalf of the bankruptcy estates and Comerica.  The Court set the approval of the Settlement Agreement for a hearing; however, on the day of the hearing, an untimely Objection was filed by Triad Commercial Captive, Stirling Bridge LLC, New York-Newport, and Teri and Grant Goodman (the "Objecting Parties").[7]  The Objecting Parties alleged that the Settlement

---

**6.** See Adversary Proceeding No. 07-ap-00031.

**7.** See Adversary Proceeding No. 07-ap-00031, Docket Entry No. 45.  Mr. Goodman acted as counsel of record for the numerous entities. Teri and/or Grant Goodman may be the

5

1  Agreement was not in the best interest of the creditors of the estate and that the release of

2  Comerica from third-party claims was overly broad.  The Trustee presented evidence on the

3  various factors under Ninth Circuit law to approve the settlement.[8]

4          At the conclusion of the hearing on the settlement, counsel for the Objecting

5  Parties and counsel for Comerica agreed, on the record, to a modification of the proposed order

6  approving the Settlement Agreement.  The modified language made it clear that the claims of

7  third parties against Comerica were not released by the Settlement Agreement.  Accordingly, the

8  Court entered an Order Granting Motion to Approve Compromise/Settlement ("Order Approving

9  Settlement Agreement"), which incorporated the Settlement Agreement and provided that the

10 Settlement Agreement did not release any claims asserted by non-debtor parties.[9]

11         Despite the clear language, the Objecting Parties nevertheless appealed the validity

12 of the release language, among other issues, to the Bankruptcy Appellate Panel ("BAP") of the

13 Ninth Circuit.  The BAP affirmed this Court's approval of the release language, stating that the

14 language only effectuated a release of claims as between the parties to the Settlement Agreement;

15 namely, the bankruptcy estates and Comerica.  Accordingly, any third-party claims against

16 Comerica were unaffected by the release language.[10]

17         After the Debtors ceased their operations, the Debtors' creditors began to seek

18 collection on the personal guarantees which the Goodmans had executed and which served as an

19 additional basis for the Debtors' creditors to be paid in full.  When voluntary collection efforts did

20 not succeed, the creditors commenced actions on the guarantees in the Arizona State Court

21  _____

   principal of one or more of the entities.

22
23     **8.**  The Trustee relied on the Ninth Circuit decision of <u>In re Woodson</u>, 839 F.2d 610 (9th
   Cir. 1988) as to the various factors that must be shown to approve a settlement as being in the
24 best interest of creditors.

25     **9.**  See Adversary Proceeding No. 07-ap-00031, Docket Entry No. 52.

26     **10.**  See Ninth Circuit Bankruptcy Appellate Panel Case No. AZ-08-1079-MkEMo.  The
   BAP's Memorandum can also be found at Docket Entry No. 97 in Adversary Proceeding  No.
27 07-ap-00031.

28                                        6

against the Goodmans (the "Guarantee Action or Actions"). In one such Guarantee Action, CPCC obtained a $5 million State Court judgment against the Goodmans on November 8, 2005.[11]

Despite these judgments, the Goodmans have waged a war of attrition to avoid payment on their guarantees. For example, the Goodmans have filed a variety of lawsuits, special actions, motions, and independent actions, which have named their judgment creditors, counsel for those creditors, and even state court judges as defendants.[12] In some of these actions, the Goodmans continually argue that the judgment creditors are precluded from collecting upon their judgments because the Settlement Agreement, approved by this Court in the Comerica Action, has released them from their guarantee obligations. Although this argument has been rejected multiple times, by multiple Courts, the Goodmans continue to file pleading after pleading, in various Courts in which they advance the same argument.[13] Copies of the decisions from various Courts assessing sanctions against the Goodmans and their related entities have been filed with this Court.

III. DISCUSSION

The Court is presented with three separate issues. First, the Plaintiffs have filed a Motion for Remand in which they argue that this Court lacks jurisdiction to hear and determine any motions in this Removed Action. For purposes of this decision, the Court assumes that the

---

**11.** See Maricopa County Superior Court Case No. CV2004-000669. The Judgment can also be found at Docket Entry No. 6 in this Adversary Proceeding attached to CPPCC's Motion to Dismiss as Exhibit A.

**12.** See Maricopa County Superior Court Case Nos. CV2003-005802, CV2005-002890, CV2005-003271, CV2006-013031, CV2008-14790, CV2008-14791, CV2008-031667, CV2008-31668, CV2008-033330. Also See, U.S. District Court (Ariz.), No. CV 07-0163; Ninth Circuit Court of Appeals Docket No. 08-70698; Arizona Supreme Court, Court of Appeals No. 1 CA-CV-06-0149; U.S. District Court (Ariz.), No. CV 09-0262 (Writ of Mandumus).

**13.** See Maricopa County Superior Court Case Nos. CV2008-14790, CV2008-14791, CV2008-031668, CV2008-031667, CV2008-033330. Also See See Ninth Circuit Bankruptcy Appellate Panel Case No. AZ-08-1079-MkEMo, BAP Memorandum appealed to Ninth Circuit Court of Appeals Case No. 09-60003.

7

1   Plaintiffs are arguing that this Court lacks subject matter jurisdiction to decide any issue

2   presented by any party, and must remand the Removed Action to the State Court.  Second, the

3   Defendants Empire Southwest, CPCC and MWMF have filed Motions to Dismiss, in which they

4   argue that the Plaintiffs' Complaint should be dismissed due to their failure to state a claim on

5   which relief may be granted.  Finally, CPCC and MWMF have filed a Motion for Stay under the

6   All Writs Act, in which CPCC and MWMF request that this Court enter an injunction to prevent

7   the Goodmans and Goodman-related entities from filing any further actions which rely on the

8   same operative facts used in this and similar cases, without first filing the complaint with this

9   Court and obtaining this Court's permission to proceed.

10

11  A.  This Court has Inherent or Ancillary Jurisdiction

12          Courts have an interest in ensuring that their orders are executed in the manner

13  intended.  Accordingly, a bankruptcy court has the authority to assert ancillary jurisdiction when

14  another court is requested to interpret its order.  In re Fibermark, Inc., 369 B.R. 761 (Bankr.D.Vt.

15  2007).  Ancillary jurisdiction may be asserted for two purposes:

16              (1) to permit disposition by a single court of claims that are, in
                varying respects and degrees, factually interdependent, and (2) to
17              enable a court to function successfully, that is, to manage its
                proceedings, vindicate its authority, and effectuate its decrees[.]
18
    Kokkonen v. Guardian Life Ins. Co. Of America, 511 U.S. 375, 380-81, 114 S.Ct. 1673, 128
19
    L.Ed.2d 391 (1994).  Thus, "bankruptcy courts have inherent or ancillary jurisdiction to interpret
20
    and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334."
21
    In re Chateaugay Corp., 201 B.R. 48, 62 (Bankr.S.D.N.Y.1996), aff'd 213 B.R. 633
22
    (S.D.N.Y.1997).
23
            Relevant to this Court's analysis of its jurisdiction to hear and determine the
24
    Motions now presented in this Adversary is the United States Supreme Court's analysis in
25
    Kokkonen.  Although the Supreme Court determined that the district court, in that case, did not
26
    have ancillary jurisdiction to enforce a settlement agreement, it stated:
27

28                                                  8

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision. . . or by incorporating the terms of the settlement agreement in the order.  In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist. . . . The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

Kokkonen at 381, 114 S.Ct. at 1677.

As part of their Complaint in the Removed Action, the Plaintiffs request that another Court interpret this Court's Order Approving Settlement Agreement between the Chapter 7 Trustee and Comerica.  Albeit in disjointed and confusing language, the Plaintiffs allege that certain language in the Settlement Agreement approved by this Court somehow releases them, as guarantors, on their liability to the Defendants in this Removed Action.[14]  At an initial hearing in this Removed Action, counsel for the Plaintiffs indeed stated, on the record, that the Plaintiffs' theories relied on this Court's Memorandum Decision of August 30, 2007 and the Settlement Agreement approved by this Court between the Trustee and Comerica.  The Plaintiffs contend that because these Defendants had previously acted in a "joint defense" against the Debtors in the underlying bankruptcy proceedings, these creditors, as a group, are now bound by the actions of each individual creditor.  Accordingly, under the Plaintiffs' legal theory, since one creditor, Comerica, entered into a Settlement Agreement with the Trustee, the release between Comerica and the bankruptcy estates is a release of the Plaintiffs' obligations owed on any guarantee to any creditor of these bankruptcy estates.[15]

---

**14.**  Both this Court and the Arizona District Court, in its decision on the Writ of Mandamus, focused on the obdurate and obfuscating allegations contained in the Complaint.  However, the Plaintiffs refused this Court's invitation to amend their Complaint.

**15.**  At the hearing approving the Settlement Agreement between the Trustee and Comerica, it was specifically stated on the record that the release between those parties had no effect on any non-debtor parties.  See Adversary Proceeding No. 07-ap-00031, Docket Entry No. 49; Minute Entry of hearing held on March 11, 2008 as well as Memorandum Decision at Docket Entry No. 51. On appeal, the BAP also commented on the release only affecting the bankruptcy estates and Comerica.  See Bankruptcy Appellate Panel Case No. AZ-08-1079-

9

1          Without determining the validity of any of these arguments, the above analysis

2   provides a clear example of the Plaintiffs' reliance on prior decisions or orders of this Court.

3   Such reliance, which can only be predicated on this Court's rulings concerning core bankruptcy

4   proceedings, such as a settlement between the Trustee and a creditor, provides this Court with

5   the requisite discretion in asserting ancillary jurisdiction over this Removed Action.  In

6   considering whether to assert such inherent or ancillary jurisdiction, the Court notes that the

7   Settlement Agreement and Order Approving Settlement Agreement are the product of complex

8   bankruptcy proceedings which have occurred over the last six years and involve numerous

9   creditors, contested matters and adversary proceedings.  Furthermore, given the Plaintiffs'

10  incomprehensible and incoherent arguments in their Complaint in the Removed Action, as well

11  as the Goodmans' status as creditors in the administrative bankruptcy cases, this Court has

12  concerns that the Plaintiffs may be attempting to adjudicate issues which are core bankruptcy

13  matters in other forums.[16]  Based upon the foregoing, the Court finds that it has, at a minimum,

14  inherent or ancillary jurisdiction over this matter.  As a result, the Plaintiffs' argument that this

15  Court must remand this matter to the State Court is without merit.  The Plaintiffs' Motion to

16  Remand is denied.

17

18  B. The Motions to Dismiss Shall be Granted

19          Defendants Empire Southwest, CPCC, and MWMF move to dismiss the

20  Complaint in the Removed Action, pursuant to Fed.R.Civ.P. 12(b)(6), which is incorporated

21  _____

22  MkEMo. The BAP's Memorandum can also be found at Docket Entry No. 97 in Adversary
    Proceeding  No. 07-ap-00031. *See* pp. 16-17 of BAP Memorandum.

23
          **16.** As part of Adversary Case 07-ap-00031, counsel for the Trustee was seeking to
24  subordinate Comerica's claim.  However, as discussed previously, the matter was ultimately
    settled, and Comerica's claim was not subordinated.  Nevertheless, the Goodmans appear to
25  argue in the Complaint, separate from the allegations of the other Plaintiffs, that as a result of
    this subordination litigation, their $4 million unsecured claim should have been paid.  Thus, the
26  Goodmans are attempting to litigate matters that are core jurisdictional matters of this Court in
27  this Removed Action.

28                                              10

herein by Fed.R.Bankr.P. 7012(b)(6). In considering a motion to dismiss under Rule 12(b)(6), all allegations of material fact in the complaint must be taken as true and must be construed in the light most favorable to the non-moving party. DeGrassi v. City of Glendora, 207 F.3d 636 (9th Cir. 2000); Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar, 179 F.3d 1244 (9th Cir. 1999); Eneso Corp. v. Price/Costco Inc., 146 F.3d 1083 (9th Cir. 1998); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); In re Fresher, 846 F.2d 45, 46 (9th Cir. 1988). While a Rule 12(b)(6) motion to dismiss does not require "detailed factual allegations," the plaintiff must provide "more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). Dismissal of a complaint is appropriate if it appears beyond doubt that the claimant can prove no set of facts in support of the claim that would entitle him or her to relief. ARC Ecology v. U.S. Dept. Of Air Forces, 411 F.3d 1092, 1096 (9th Cir. 2005); Walleri v. Federal Home Loan Bank of Seattle, 83 F.3d 1575 (9th Cir. 1996); Strother v. Southern California Permanente Medical Group, 79 F.3d 859 (9th Cir. 1996); Arcade Water Dist. v. United States, 940 F.2d 1265, 1267 (9th Cir. 1991).

In considering a motion to dismiss, courts do not necessarily assume the truth of legal conclusions cast in the form of factual allegations. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.3d 618, 624 (9th Cir. 1981). A complaint may be dismissed for failure to state a claim "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that contains a "hodgepodge of vague and conclusory allegations" is insufficient to support claims for relief. Powell v. Jarvis, 460 F.2d 551, 553 (2nd Cir. 1972).

This Removed Action was commenced by the Plaintiffs' filing a sixty-two page Complaint in the Arizona State Court, which action was subsequently removed to this Court. Upon reviewing the Complaint, this Court was unable to determine the basis upon which the

1  Plaintiffs sought relief.  Accordingly, the Court entered an Order to Amend Complaint, which

2  granted the Plaintiffs thirty days to amend their Complaint for the purpose of clarifying the facts

3  upon which they were relying to support their claims.[17]  The Order to Amend Complaint

4  provided the Plaintiffs with the Court's concerns about the Complaint.  For example, the Order

5  to Amend Complaint stated that because of the lack of factual allegations and a mere recitation

6  of unrelated or contradictory statutory citations, the Court could not determine the nature of the

7  relief that the Plaintiffs were requesting.  However, the Plaintiffs' Complaint appeared to rely on

8  the Settlement Agreement approved by this Court.[18]

9          The Plaintiffs chose not to amend their Complaint and instead filed a

10  Supplemental Response which failed to correct the defects articulated by the Court in its Order

11  to Amend Complaint.  Given the Plaintiffs' failure to amend their Complaint, the Court was left

12  with an incomprehensible document containing numerous pages of recitations of legal principles,

13  cases, and statutes, at times couched as factual allegations.

14          In an effort to provide clarity regarding the basis of the Plaintiffs' Complaint, the

15  Court had the following exchange with Mr. Goodman, counsel for the Plaintiffs, at the March 31,

16  2009 Fed .R .Bankr. P. 7016 Scheduling Conference:

17
18          THE COURT: . . . you're focusing on my decision and the
            settlement agreement in the bankruptcy court?

19          MR. GOODMAN: Actually your binding findings of fact and law
            are a part of the issue -- but the defendants' conduct in resolving
20          their claims with court approval and a judgment that as a matter of
            law can't be reinterpreted at this late date -- are all part of the
21          motion for summary judgment.

22          THE COURT: Again, you're focusing on my decision and the
            settlement agreement in the bankruptcy court.  Do I understand
23          you correctly?

24          MR. GOODMAN: You understand it correctly to the extent I'm
            taking the express wording in the settlement.  It doesn't need any
25
_____

26      **17.** See Docket Entry No. 14.

27      **18.** Id.

28                                        12

1  interpretation.  That's why it's not a fact issue; that's why it's ripe
2  for summary judgment, Your Honor.

3  Based upon this exchange, and the Court's analysis above, the Court concludes that the

4  Plaintiffs' Complaint relies exclusively upon the  Settlement Agreement.  Since the Settlement

5  Agreement and Order Approving Settlement Agreement bind only the bankruptcy estates and

6  Comerica, the parties to the Settlement Agreement, the Court finds that the Plaintiffs have failed

7  to state a claim upon which relief may be granted.  The Settlement Agreement does not pertain to

8  the release of any guarantee that the Plaintiffs may have entered into with any creditor of these

9  estates or any other party.  Therefore, the Plaintiffs are unable to rely on the Settlement

10  Agreement for any proposed affirmative relief that they may have set forth in the Complaint.

11          As a matter of law, the Court finds that the Plaintiffs' Complaint must be

12  dismissed pursuant to Rule 12(b)(6).  This dismissal is with prejudice.  The Plaintiffs may not

13  assert any claim for relief in any other court which relies on the Settlement Agreement, and the

14  releases contained therein.  All matters concerning the Settlement Agreement have been

15  adjudicated by this Court, and are not open to interpretation, in another court, on some theory

16  that the Plaintiffs may invent.

17

18   C. Relief Pursuant to the All Writs Act (28 U.S.C.§ 1651(a)) is Appropriate

19          Pursuant to 28 U.S.C. § 1651(a), referred to as the "All Writs Act," "[t]he

20  Supreme Court and all courts established by Act of Congress may issue all writs necessary or

21  appropriate in aid of their respective jurisdiction and agreeable usages and principles of law."

22  Bankruptcy courts, being courts established by Act of Congress, "have the power to regulate

23  vexatious litigation pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651."  Lakusta v. Evans (In re

24  Lakusta), 2007 WL 2255230, at *3 (N.D.Cal. Aug. 3, 2007); In re International Power Sec.

25  Corp., 170 F.2d 399, 402 (3d Cir. 1948).

26

27

28                                              13

The All Writs Act itself does not "afford independent grounds" for a court's jurisdiction. Newby v. Enron Corp., 302 F.3d 295, 300 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1270, 154 L.Ed.2d 1024 (2003). Thus, in order for a federal court to have the power to apply the All Writs Act, it must have a jurisdictional basis for hearing a case. In this Removed Action, as discussed previously, this Court has inherent or ancillary jurisdiction to hear this matter. In re Chateaugay Corp., 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd* 213 B.R. 633 (S.D.N.Y.1997). Accordingly, this Court has an independent basis for its jurisdiction outside of the All Writs Act, so it may consider whether relief is appropriate under the All Writs Act.[19]

It is well settled that the application of the All Writs Act is "an extreme remedy that should rarely be used." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007) *quoting* De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990); Newby, at 302. However, "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." Molski, at 1057 *quoting* De Long v. Hennessey, 912 F.2d 1144, 1148 (9th Cir. 1990). The broad scope of the All Writs Act allows a court to issue an order restricting the filing of meritless cases by a litigant whose pleadings raise claims identical or similar to those that have already been adjudicated. In re Oliver, 682 F.2d 443 (3rd Cir. 1982). The Ninth Circuit has established the following four factors for courts to consider in applying the All Writs Act:

> 1.) The litigant must be given notice and a chance to be heard before the order is entered;

---

**19.** Federal courts must consider the Anti-Injunction Act when making a determination under the All Writs Act. The Anti-Injunction Act acts as an "absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless the action falls within a designated exception." One of these exceptions allows for federal injunctions of ongoing state court proceedings, where such injunction is a necessary aid to the federal court's jurisdiction. Furthermore, the Anti-Injunction Act "does not preclude injunctions against a lawyer's filing of *prospective* state court actions." Newby, 302 F.3d at 301. Thus, this Court will analyze the relief requested by the Defendants as a request that this Court control any prospective actions to be filed by the Plaintiffs on these issues.

14

| | |
|---|---|
| 1 | 2.)    The court must compile an adequate record for review; |
| 2 | 3.)    The court must make substantive findings about the frivolous or harassing nature |
| 3 | of the plaintiff's litigation; |
| 4 | 4.)    The vexatious litigant order must be narrowly tailored to closely fit the specific |
| 5 | vice encountered. |
| 6 | De Long, 912 F.2d at 1147 - 48. |

2.)     The court must compile an adequate record for review;

3.)     The court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation;

4.)     The vexatious litigant order must be narrowly tailored to closely fit the specific vice encountered.

De Long, 912 F.2d at 1147 - 48.

1. The Court must find that the Plaintiffs were given appropriate notice and an opportunity to be heard. CPCC and MWMF filed their Motion for Stay under the All Writs Act on January 12, 2009. Counsel for the Plaintiffs filed an Omnibus Response on April 17, 2009, which purported to include a response to the Motion for Stay under the All Writs Act. Furthermore, the Court held oral argument on May 14, 2009 which provided the Plaintiffs with an opportunity to be heard on the matter. Given the Motion for Stay under the All Writs Act, the Omnibus Response, and the oral argument, the Court finds that the Plaintiffs were given ample notice of the request for an injunction under the All Writs Act, as well as an opportunity to be heard on the matter. Accordingly, the first element of the four-part All Writs Act test is met.

2. The Court must establish an adequate record for review. Throughout this and other proceedings, the record is replete with state and federal court decisions which discuss the frivolous nature of the Goodmans' and the other Plaintiffs'[20] efforts to forestall the collection efforts of those creditors which have obtained judgments on the Goodmans' guarantees. The following discussion focuses on a number, but certainly not all, of these cases.

A. In State Court Case No. CV2008-031668, the plaintiffs, which included the Goodmans, argued that the Settlement Agreement and Order Approving Settlement Agreement, effectuated a release of the Goodmans from their guarantees. The Court found that the Settlement Agreement and Order Approving Settlement Agreement had not released the

---

**20.** Although the entities are not identical in all of the lawsuits, Mr. Goodman has consistently served as the attorney for the parties asserting the claims. Moreover, the entities involved in the numerous actions are related to the Goodmans in that the Goodmans apparently control or manage the entities.

15

plaintiffs.  The Court also found that the plaintiffs had "brought [their] claim solely or primarily

for delay or harassment."  Minute Entry, page 2, March 25, 2009.[21]  Furthermore, the Court held

that since Mr. Goodman, counsel for the parties, is an attorney, "he is in a better position tha[n] a

non-lawyer to understand the prior rulings of this and other courts and to determine the propriety

of making such claims."  Id.  The Court concluded its decision by dismissing the plaintiffs'

claims, and awarding one of the defendants, Comerica, its request for attorneys' fees and

sanctions.

        B.  In Arizona District Court Case No. CV-07-00163, the plaintiffs Northern

Highlands I and II, which are Goodman-related entities and were represented by Mr. Goodman,

attempted to relitigate matters in the federal district court that had previously been litigated in

state court.  In a order authored by the Honorable David C. Bury, the Court held that the

Goodman-related entities had "repeated numerous allegations . . . that have been litigated or are

continuing to be litigated at least once and generally numerous times as the state court level."[22]

Judge Bury's order was subsequently appealed, and the Ninth Circuit Court of Appeals, in

affirming the order, stated that the Goodman-related entities had violated the *Rooker-Feldman*

doctrine by "using the federal forum to attack the validity of the state court outcome."

Furthermore, the decision stated that "the issues raised before the district court were the same

that [the Goodman-controlled entities had] raised in the state court and bankruptcy litigation."[23]

The Ninth Circuit Court of Appeals, acting *sua sponte*, also took the additional step of issuing an

order to show cause why sanctions should not be assessed against Mr. Goodman for: (1) conduct

unbecoming a member of the bar and abuse of the judicial process—to wit, making frivolous

---

**21.** See Adversary Proceeding 09-ap-00009, Docket Entry No. 29; Defendant Greenberg Taurig, LLP's Notice of Position as to Dismissal or Remand, Exhibit 1.

**22.**  A copy of the Arizona District Court Order authored by Judge Bury was filed  at Docket Entry No. 32.

**23.**  A copy of the Ninth Circuit Memorandum Decision affirming Judge Bury's decision was provided to this Court at the May 14, 2009 hearing.

16

claims against judges, prior opposing counsel and their spouses, and refiling suit involving already fully litigated claims; (2) filing a frivolous appeal that included, inter alia, unsupported aspersions on the integrity of members of the state and federal judiciary; and (3) disregarding federal and court rules regarding the form of pleadings.[24]

C. In yet another case, Arizona Court of Appeals Case No. CA-CV 08-0350, the Court rejected the Goodmans' appeal of a trial court judgment which awarded Empire Southwest those amounts claimed as due and owing on the Goodmans' personal guarantees. The decision stressed that the discharge of a principal's debt [the Debtors in this case] did not affect the non-debtor's [the Goodmans'] liability under a guarantee. Furthermore, the decision considered, but summarily dismissed, any arguments that the Goodmans' guarantees were somehow discharged as a result of the proceedings in this Court.[25]

D. In Arizona Court of Appeals Case No. CA-CV 08-0355, the Court issued a Memorandum Decision on March 31, 2009 in an action between the Goodmans and Bombardier Capital. The Goodmans had made similar claims to those already discussed, alleging that their liability had been discharged in this Court against Bombardier Capital. The Court rejected the argument, stating that the bankruptcy court had made no mention of any guarantees or the Goodmans, as guarantors, in its decisions. Furthermore, because the bankruptcy court had not addressed such a guaranty issue, the Goodmans remained liable.[26]

E. In Bankruptcy Case No. 08-ap-00464, jointly administered with Bankruptcy Case No. 08-ap-0047[27], the Goodmans and Goodman-related entities filed complaints in the

---

**24.** The Ninth Circuit Order to Show Cause was provided to this Court at the May 14, 2009 hearing.

**25.** A copy of the Arizona Court of Appeals Case was filed at Docket Entry No. 33.

**26.** See Docket Entry No. 33; Supplemental Reply in Support of Motion to Dismiss and Motion for Injunctive Relief; Memorandum attached as Exhibit B.

**27.** See Maricopa County Superior Court Case Nos. CV2008-14790 and CV2008-14791, removed to the Bankruptcy Court as Case Nos. 08-ap-00464 and 08-ap-00471.

State Court similar to the Complaint considered in this decision, which actions were removed to this Court. The Goodmans and Goodman-related entities relied on the Settlement Agreement and Order Approving Settlement Agreement to argue that they had been released on their personal guarantees. Although the Goodmans and Goodman-related entities withdrew their complaints, the Court still issued a Memorandum Decision in which it stated that the plaintiffs' reliance on the Settlement Agreement gave this Court jurisdiction over the matter. Additionally, this Court awarded attorneys' fees, as a sanction against the Goodmans, as a result of their abuse of the discovery process.[28] In these prior actions in this Court, the Defendants had asked for an injunction to be issued under the All Writs Act. This Court denied that relief, hoping that the withdrawal of the complaints would cause the Goodmans to rethink their actions and cease their vexatious behavior. Unfortunately, that did not occur and has led to the Goodmans filing this Removed Action and taking further action in the state and federal courts.

F. The Defendants have filed a document with this Court setting forth the numerous actions or proceedings pending in the state and federal courts.[29] That the Goodmans and Goodman-related entities have filed such actions, over and over again, focusing on the Settlement Agreement and whether the Goodmans have been released on their personal guarantees is clear from the above discussion and the decisions issued by other courts.

Based upon the foregoing, the Court finds that the record created in these actions, filed in the state and federal courts, reflects a pattern by the Goodmans and the Goodman-related entities to file the same pleading, or repetitively argue the same matters on appeal, as to the effect of the Settlement Agreement and the decisions of this Court. Monetary sanctions awarded by the state court and this Court have not deterred the Goodmans or the Goodman-related entities.

---

**28.** See Adversary Proceeding No. 08-ap-00464, Memorandum Decision, Docket Entry No. 109 and Order Granting Attorneys' Fees, Docket Entry No. 120.

**29.** See Docket Entry No. 8, Motion for Stay under the All Writs Act, Exhibit A.

3.  As noted above, state and federal courts, at the trial and appellate level, have repeatedly reviewed the substantive issues raised by the Goodmans and the Goodman-related entities concerning the ability of the Settlement Agreement, approved by this Court, to release the liability of the Goodmans or Goodman-related entities on their guarantees. The courts have found these substantive issues to be without merit.  The Settlement Agreement approved by this Court, with the accompanying releases between specific parties, does not release the Goodmans or the Goodman-related entities from their independent obligations on their guarantees to creditors.  Nevertheless, the Goodmans and the Goodman-related entities have continued to assert the same frivolous matters in this and other courts.  In fact, Mr. Goodman has been sanctioned and warned several times in the past to cease the assertion of claims that have been resolved by this Court.  However, despite the efforts of numerous courts to use traditional means to send the Goodmans the message that such vexatious or harassing litigation tactics are unacceptable, the Goodmans still continue to bring frivolous actions and file an inordinate number of pleadings in an apparent effort to delay collection by their judgment creditors.  Accordingly, although an extreme measure, the Court finds that based upon the Goodmans' and Goodman related entities' record of vexatious and harassing litigation, an injunction under the All Writs Act is the only way to curtail such behavior.

4.  The final element requires a narrowly tailored order to address the behavior encountered.  In fashioning such an order, the Court finds that the disregard shown by the Plaintiffs for the legal system is offensive and should not be tolerated.  The legal system is not an avenue for parties to inhibit or impede justice.  Mr. Goodman has turned the legal process into a perverse game in which the Defendants, and many others, have been forced to participate with no effective recourse.  Yet, as an attorney, Mr. Goodman is in a better position than most to understand the procedural and ethical rules of the courts and the impact of a decision on his future actions and those of his clients.  The Goodmans and the Goodman-related entities have allowed Mr. Goodman to pursue frivolous and vexatious litigation, unfettered, on their behalf.

19

No effort by this Court, or any other state or federal court, has stopped the abusive filings by Mr. Goodman on behalf of the Goodmans and the Goodman-related entities.

The Tenth Circuit, in analyzing a situation in which an attorney, after being disbarred, continued to file pleadings, as a pro se litigant, in the federal district and circuit court of appeals, stated:

> . . . . .Mr. Smith raises a host of overlapping, repetitious, and conclusory objections. Whether or not each has been expressly included in the above discussion, we have considered all of the issues raised. ... . and have concluded that Mr. Smith is not entitled to any relief.[30]

And later:

> Evidently, neither professional discipline nor personal sanctions has impressed upon Mr. Smith the essential underlying problem. Initially as counsel, and now as a pro se litigant, he has 'engaged in a pattern of litigation activity which is manifestly abusive' and thereby 'strained the resources of this court. [citations omitted].

In re Mail-Well Envelope Co., et als. v. Regional Transportation Dist., 150 F.3d 1227, 1232 (10th Cir. 1998). The Tenth Circuit then set forth the terms and conditions of a prospective injunction which prohibited Mr. Smith from filing an "original proceeding" unless he first obtained the permission of the Court to proceed pro se.[31] Given the facts of this case, the Court concludes that some type of prospective injunction is warranted on this record. If Mr. Goodman, acting pro se or on behalf of Ms. Goodman or any of the Goodman-related entities, wishes to

---

**30.** In re Mail-Well Evelope Co., et als. v. Regional Transportation Dist., 150 F.3d 1227, 1231 (10th Cir. 1998).

**31.** The injunction required Mr Smith to file a petition with the clerk of the Tenth Circuit Court of Appeals requesting leave to file a proceeding. The petition had to include (1) a list of currently pending proceedings, indicating his involvement in any proceeding, and the current status and disposition of the proceedings; (2) a list of all assessments of attorneys' fees, costs, or other monetary sanctions against him arising out of any federal court matter and information about whether and when each assessment had been paid; and (3) a list of all outstanding injunctions, contempt orders, or other "judicial directions limiting his access to any sate or federal court. . . ." Mr. Smith was also required to file, at the same time, a notarized affidavit setting forth the issues he sought to present in the proceeding he proposed to file, with "a short statement of the legal basis asserted for the challenge." The affidavit was also to contain an appropriate statement that the proceeding to be filed was consistent with the duties and obligations of a litigant under Fed.R.Civ.P. 11. Id. at 1232.

proceed, in any state or federal court, with any litigation involving any claim related to their

guarantees of the Debtors' obligations which relies in whole, or in part, on a position or

argument that the Settlement Agreement, the Order Approving the Settlement Agreement, or any

memorandum decision or order of this Court in the Debtors' cases somehow releases,

extinguishes, or in any manner affects their liability on their guarantees of the Debtors'

obligations, Mr. Goodman must first file the proposed complaint with this Court, with an

appropriate certification under Bankruptcy Rule 9011. The proposed complaint will not initially

be placed on the docket, and any party named as a defendant in the proposed complaint need not

initially respond. If the Court determines that the proposed complaint is in contravention of this

memorandum decision, and related injunction to be entered separately, the Court will summarily

deny any affirmative relief therein, dismiss the complaint, and place the Court's summary

denial, dismissal, and Mr. Goodman's proposed complaint on the docket of this Court.[32] If the

Court approves the filing of the proposed complaint, the Court will direct that the clerk of the

Court open an appropriate proceeding and assign an electronic docket entry number to the

proceeding. At that point, Mr. Goodman may request that a summons be issued, and the

proceeding will move forward, according to the Federal Rules of Bankruptcy Procedure or by

other appropriate means.


IV. CONCLUSION

Based upon the foregoing, the Court finds that the Plaintiffs' reliance on prior

orders of this Court provides this Court with the ability to assert ancillary jurisdiction over this

matter. As a result, the Plaintiffs' Motion to Remand is denied. The Court also finds that the

Plaintiffs are unable to rely on the Settlement Agreement and Order Approving Settlement

Agreement to release their independent obligations on their guarantees of the Debtors'

obligations to creditors. The Complaint is devoid of any facts to support their claims.

---

**32.** In the absence of this judge being able to review a proposed complaint, the Chief
Judge of the Bankruptcy Court may so act in her stead.

21

Accordingly, the Plaintiffs have failed to state a claim upon which relief may be granted, and this Adversary is dismissed with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated herein by Fed.R.Bankr.P. 7012(b).

Finally, the Court finds that the Plaintiffs have proceeded with vexatious and harassing litigation in an effort to evade their guarantee of the Debtors' obligations. Accordingly, this Court will issue a prospective injunction, under the All Writs Act, which requires Mr. Goodman, acting pro se or on behalf of Ms. Goodman or the Goodman-related entities, whether he wishes to file the complaint in the state or federal court, to file a proposed complaint with this Court concerning any claim that the Settlement Agreement, the Order Approving Settlement Agreement, or any decision or order of this Court in the Debtors' cases somehow released, extinguished, or in any manner affected their liability on any guarantee of the Debtors' obligations. The complaint will not be placed initially on the Court's docket. No defendant need initially respond to the complaint. The Court shall review the complaint and determine whether the complaint should be summarily denied, or whether it should proceed. If the Court summarily denies the relief requested and dismisses the complaint, the summary denial and dismissal order and complaint shall be placed on the docket. If the Court allows the complaint to proceed, the Court will direct the clerk of Court to open a proceeding, assign a case number, and Mr. Goodman may proceed according to the Federal Rules of Bankruptcy Procedure or by other appropriate means.

DATED this 15the day of September, 2009.

_Sarah Sharer Curley_

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

22